By the Court.
This proceeding comes into court upon error to the Public Utilities Commission of Ohio. The facts incident to the solution of the problem presented are as follows:
The Ohio Utilities Company, a corporation organized and existing under the laws of the state of Ohio, is engaged in the business of manufacturing and selling gas and electricity in the village of Hillsboro, Highland county. In the summer of 1920 the Hillsboro Business Men’s Association filed a protest with the Public Utilities Commission against rates that had theretofore been filed by the Ohio Utilities Company, one for gas service, known as No. 2, and the other for electric service, known as No. 3, such schedules being effective August 26, 1920. Upon the filing of this protest, the schedules were suspended, but were afterward put in force upon the' *144 utilities company filing a bond with the commission. On July 5,1921, the Public Utilities Commission entered its order and findings, as to the rate for electric service, lower than the rate- schedule theretofore in force. Later a rehearing was granted by the commission, and on January 10,1923, the final order and decision was made by the Public Utilities Commission, fixing the rate for residence and commercial lighting at 12 cents per kilowatt hour for the first 200 kiiowatt hours per month net, 10 cents per kilowatt hour for all over 200 kilowatt hours per month net, and it was further ordered that the Ohio Utilities Company refund in cash or by-credit upon current bills by the 10th of June, 1923, any difference between these rates and the charges imposed upon its consumers from and after the 26th of August, 1920, to all of which orders, acts, and proceedings of the Public Utilities Commission the Ohio Utilities Company at the time excepted. Upon denial of an application for a rehearing these proceedings in error in this court were prosecuted.
There are 12 grounds of error set forth, but the same may be generalized under the head that the decision and order of the Public Utilities Commission are contrary to law and contrary to the manifest weight of the evidence.
In determining this question, this court is to be guided by the rule laid down in the case of Village of St. Clairsville v. Pub. Util. Comm., 102 Ohio St., 574, at page 583, 132 N. E., 151, at page 153, in the following language:
“Let us next inquire whether the finding and order are against the weight of the evidence. On this *145 point the inquiry should not be to determine whether there is a scintilla of evidence to support the finding of the commission; but, on the contrary, we are of the opinion that this court should examine the record with a view of determining whether the findings of the commission on the facts are reasonably supported by the evidence adduced at the hearing. Inasmuch as this is the first review of the evidence, the situation of this court in such matters is analogous to that of the Court of Appeals in weighing and reviewing the evidence in an error proceeding from the court of common pleas. Applying such analogy, the findings of the commission should not be disturbed unless they are so manifestly against the weight of the evidence, and so clearly unsupported by it, as to show misapprehension, or mistake, or willful disregard of duty. This court has not had the opportunity of observing the demeanor of the witnesses, and is therefore not as competent to weigh the evidence as the commission should be.”
And attention is called to the further announcement of this court, to be found in the first proposition of the syllabus of Hocking Valley Ry. Co. v. Pub. Util. Comm., 92 Ohio St., 362, 110 N. E., 952:
“This court will not substitute its judgment for that of an administrative board, created pursuant to an act of the Legislature, as to matters within its province. Before the court will interfere with an order of the railway commission, or its successors, it must appear from a consideration of the record that the action of the commission was unlawful or unreasonable.”
Applying these principles heretofore announced by this court to the record in the case at bar, it is *146 proper for us to state at the outset that we are particularly impressed with the very thorough manner in which the Public Utilities Commission tried, considered, and announced its conclusion in the instant case. There was not only the original hearing, but the rehearing, the testimony of the witnesses, the examination by the commission’s experts, assisted by the exhaustive arguments, briefs, and research of counsel.
It is not necessary and would not be profitable to incorporate in this opinion a detailed recital or discussion of the evidence in the record, the same being too voluminous. Sufficient is it to say that it is composed of the testimony of the witnesses offered by the plaintiff in error, the exhibits and the result of the research of the experts and testimony of the witnesses called for cross-examination by the protestan!, the Business Men’s Association of the village of Hillsboro.
The case of the protestan! was not so much made upon its own testimony as upon the cross-examination of the witnesses called by the plaintiff in error, as well as by the analysis of the figures submitted.
Now the gist of the finding of the Public Utilities Commission, omitting its conclusions as to figures and values, is:
“That, from its said investigation aforesaid, it is apparent that this plant has been uneeonomically planned and constructed, in many regards inefficiently operated, and the service conducted without that regard for attracting new business and encouraging the greater use of the product which would reflect the saving per unit incident to increased volume *147 of output, recognized as a basic principle in the conduct of commercial enterprises.”
Applying that doctrine to the conclusion that the Public Utilities Commission reached—that the original plant as purchased by the plaintiff in error required heavy expenditures to make it at all efficient, and that the public should not be penalized for the omissions of the administrator of the company’s affairs—the actual finding of the commission was that P. U. C. 0. No. 3, providing for a 15-cent per kilowatt hour rate for the first 200 kilowatt hours net, etc., was unjust, unreasonable, and unlawful, and that the following rates and charges were just and reasonable:
“Residence and commercial lighting: 12 cents per k. w. h. for the first 200 k. w. h. per month net; 10 cents per k. w. h. for all over 200 k. w. h. per month net.
“Private garage automobile charging: Minimum bill, $1.00 per month net.”
It is very plausibly argued by plaintiff in error that from an analysis of the figures submitted in the report of the experts of the commission the rates provided for in order No. 3 are just and reasonable; but it must be understood that in reaching the conclusions it did the commission gave consideration not only to the figures submitted by the experts, and what the property had been able to earn in its past, but also to what under a proper management and economic handling would be a just and reasonable rate for the commodity offered by the plaintiff in error, considering its possibilities in the future.
The commission heard the witnesses, observed their demeanor upon the witness stand, examined *148 the briefs of counsel, and heard at length their oral arguments.
Was this finding, therefore, manifestly against the weight of the evidence and contrary to law? While the commission is not a court, it exercises quasi judicial functions, and while its conclusions are not to be regarded as judgments, but as orders and regulations, yet it must be conceded that the exercise of a sound discretion in the consideration of evidence, the weight to be given it, and the justness of conclusions to be drawn from the facts shown by a record submitted to the commission, is within the purview of its powers.
The fact that the recommendations made by the experts of the commission were not followed in full would not justify a reversal, as testimony of such experts is to be regarded the same as that of any other witness, or means of gathering information, which may be weighed and considered and given such weight as to the commission seems proper.
The commission having given a hearing and rehearing, and exercised careful consideration for the rights of the plaintiff in error in the premises, we cannot say that its orders and conclusions are so manifestly against the weight of the evidence as to justify us in finding them unreasonable and unlawful.
The order of the Public Utilities Commission is therefore affirmed.

Order affirmed.

Marshall, C. J., Robinson, Jones, Matthias, Day and Axlen, JJ., concur.
Wanamaker, J., not participating.